**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR-05-667-PHX-DGC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Nikola Stankovic, | ) | |
| Defendant. | ) | |
| | ) | |

Defendant has filed a motion to suppress.  Dkt. #45.  The Government has filed a response and Defendant has replied.   Dkt. ##46, 50.   The Court held a hearing on Defendant's motion on November 21, 2006. Dkt. #63.  Counsel made oral arguments and presented proffers of various facts, but elected to present no additional evidence. The parties agreed that the Court should review video recordings of the two custodial interviews in question.  The Court has reviewed the recordings.

**I.      Relevant Background.**

Defendant Nikola Stankovic was born in Zenica, Bosnia and Herzegovina.   The indictment alleges that Defendant knowingly made a fraudulent statement on Immigration and Naturalization form I-485 when applying for permanent resident status in the United States.  Specifically, Defendant is charged with failing to report his service in the Army of the Republic of Srpska.

The indictment was issued on July 6, 2005, and was sealed at the request of the Government.  Dkt. ##1-3.  A warrant for Defendant's arrest was issued on July 7, 2005.  Defendant was arrested at 2:30 p.m. on September 12, 2005.  Defendant was interviewed on the morning of September 13, 2005, by agents of Immigration and Customs Enforcement ("ICE") and the Federal Bureau of Investigation ("FBI").  He was brought before a magistrate judge at 3:00 p.m. on September 13, 2005, for an initial appearance.  Dkt. #4.  The magistrate judge unsealed the indictment and appointed counsel to represent Defendant.  *Id.*

Defendant seeks to suppress statements made during his interviews on the morning of September 13, 2005.  Defendant argues that the statements were made without a knowing and intelligent waiver of his *Miranda* rights.  Defendant also argues that the Government delayed unreasonably in bringing him before a magistrate judge, and that the Government failed to notify the embassy of Serbia and Montenegro of his arrest as required by the Vienna Convention on Counselor Relations ("VCCR").  Dkt. #45 at 4-7.

**II.    Factual Findings.**

On the basis of proffers made during the hearing and the video recordings submitted by the parties, the Court makes the following factual findings:[1]

Defendant was interviewed by ICE Agent Harry Beasley at approximately 6:30 a.m. on September 13, 2005.  The interview lasted approximately 53 minutes and was recorded in its entirety.  Agent Beasley was assisted by a Serbo-Croatian translator.  Defendant's native language is Serbo-Croatian.

---

[1] The video recording of the Beasley interview provided to the Court at the November 21, 2006 hearing was poor quality and virtually inaudible.  The Court ordered the Government to provide an audible copy of the recording on November 29, 2006.  Dkt. #64.  Counsel for the Government promptly hand-delivered a second copy to the Court's chambers and waited to see if it would work.  Because this recording also initially appeared to be defective, the Court and counsel for the Government engaged in a brief conversation concerning the problems with the recording and the need to provide a third copy if the problems could not be resolved.  This conversation, which occurred without defense counsel present, did not concern the case or its issues, but was limited to the quality of the recording.  Using a different DVD player provided by the Court's staff, the Court was able to review the Beasley interview using the second recording (which has been placed in hearing exhibit 1).

At the beginning of the interview, Agent Beasley provided Defendant with a form that explained his *Miranda* rights in Serbo-Croatian.[2] Agent Beasley asked Defendant if he could read the form, and Defendant answered affirmatively.  Agent Beasley then recited each of Defendant's *Miranda* rights in English, the interpreter translated the agent's words into Serbo-Croatian, and Defendant followed along with the Serbo-Croatian form. Following this oral and written explanation – which Defendant appeared to understand – Defendant signed the form and said he was willing to answer questions.  Defendant was not handcuffed or physically restrained during the interview, nor was he threatened, coerced, or promised any benefits.  During the interview Defendant admitted that he had been a member of the Bratunac Brigade of the Army of the Republic of Srpska, a fact he failed to disclose on his I-485 form.

Following Agent Beasley's interview, Defendant was interviewed by FBI Agent Lance Lesing.  This interview was also conducted with the aid of a Serbo-Croatian translator. Agent Lesing reminded Defendant of his *Miranda* rights and asked whether he would agree to answer additional questions.  Defendant agreed.  The interview with Agent Lesing lasted approximately 21 minutes.[3]

---

[2] Defense counsel agreed at the November 21, 2006 hearing that the form explained Defendant's *Miranda* rights in Serbo-Croatian and that an English translation of the form need not be placed in evidence.

[3] The Government proffered that the Lesing interview occurred after the Beasley interview.  The interviews are captured in separate video recordings that include no time or date display, but it does appear that the Lesing interview occurred second – Agent Lesing reminded Defendant of rights that had already been explained to him, and Defendant responded to one of the initial questions by stating that he had already answered it, which he had done during the Beasley interview.  Defense counsel does not dispute the Government's proffer that the Lesing interview occurred after the Beasley interview.

The Lesing interview did not concern Defendant's alleged visa fraud, but instead focused on war crimes that occurred after the fall of Srebrenica.  Agent Lesing told Defendant that he could help himself by telling the truth, and Defendant at times appeared quite nervous, but Defendant never sought to terminate the interview, never asked to speak to a lawyer, and never appeared to be confused.

1    Defendant was brought before Magistrate Judge Virginia Mathis at 3:00 p.m. on the

2    day of his interviews. Dkt. #4. This appearance was consistent with the district schedule that

3    called for persons arrested before noon to be seen by a magistrate judge at 3:00 p.m. on the

4    day of their arrests, with persons arrested after noon appearing before a magistrate judge on

5    the following day at 3:00 p.m.

6    In explaining the delay between Defendant's arrest at 2:30 p.m. and his interview the

7    following morning at 6:30 a.m., the Government stated that a number of defendants from the

8    Phoenix area were arrested on similar charges at the same time. The Government had flown

9    three Serbo-Croatian interpreters to Phoenix for the purpose of assisting the defendants

10   during their arrests, bookings, and interviews. Because several defendants were arrested at

11   once, interviews were conducted in the order that defendants were taken into custody.

12   Several defendants were arrested before Defendant Stankovic, resulting in his interview

13   being delayed until the morning of September 13, 2005.

14   When asked why the Government elected to arrest several defendants at once, counsel

15   for the Government explained that agents were concerned about possible flight of defendants

16   and safety issues that could arise if suspects were provided advance notice of their arrests.

17   Government counsel explained that the agents knew the individuals in question had military

18   training, had made false statements about their military experience on immigration forms,

19   were part of a close-knit community in Phoenix, and that similar close-knit communities

20   existed elsewhere in the United States. Agents concluded that simultaneous arrests would

21   best ensure the safety of the agents and the successful arrests of the defendants.

22   **III.    Defendant's Arguments.**

23   Defendant makes three arguments in support of his motion to suppress. *See* Dkt. #45.

24   The Court will address them in turn.

25   **A.    Was Defendant's Waiver Knowing, Intelligent, and Voluntary?**

26   For incriminating statements obtained during a custodial interrogation to be

27   admissible, any waiver of *Miranda* rights must be voluntary, knowing, and intelligent. *See*

28   *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). The Government concedes that Defendant

1    was in custody when he was interviewed by Agents Beasley and Lesing.  Dkt. #46 at 3.

2    Defendant contends that his waiver was not knowing and intelligent.  Dkt. #45 at 5-6.

3        A waiver of *Miranda* rights "is knowing and intelligent if, under the totality of the

4    circumstances, it is made with a full awareness of both the nature of the right being

5    abandoned and the consequences of the decision to abandon it."  *United States v. Rodriguez-*

6    *Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citations and quotations omitted).  There is

7    a presumption against waiver, and the Government bears the burden of proving a valid

8    waiver by a preponderance of the evidence.  *See Colorado v. Connelly*, 479 U.S. 157, 168

9    (1986); *United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir. 1986).

10       Having reviewed the video recordings of Defendant's interviews and other facts

11   proffered at the hearing, the Court concludes that Defendant knowingly and intelligently

12   waived his *Miranda* rights.  Defendant was interviewed with the assistance of an interpreter

13   who spoke his native language.  There is no indication on the videotape that either Defendant

14   or the interpreter had difficulty communicating.  Agent Beasley advised Defendant of his

15   *Miranda* rights through the interpreter, and Defendant read along on the Serbo-Croatian

16   advice-of-rights form as Agent Beasley and the interpreter explained his rights.  Defendant

17   agreed to answer Agent Beasley's questions and signed the form.  Agent Beasley advised

18   Defendant that he could terminate the questioning at any time and request a lawyer, but

19   Defendants never did so.  These facts establish, by a preponderance of the evidence, that

20   Defendant's waiver of his *Miranda* rights was knowing and intelligent.[4]

21       Agent Lesing reminded Defendant of his *Miranda* rights at the beginning of the

22   second interview.  Agent Lesing was also assisted by an interpreter.  Defendant again

23   confirmed his willingness to answer questions.  The Court concludes that Defendant's

24   statements to Agent Lesing were knowing and voluntary.

25   _____

26       [4] Several times during the interview Defendant answered Agent Beasley in English,
     not waiting for the translator to interpret a question.  It is apparent from these exchanges that
27   Defendant understands some English.  His answers in these instances were responsive and
     appropriate to the questions asked, did not reflect confusion, and appear in the recording to
28   have been knowing and intelligent.

1  Defendant contends that his general lack of familiarity with the U.S. court system, his
2  language difficulties, his general fear as an alien in custody, and the 16-hour delay in
3  commencing his interview all affected the knowing and intelligent nature of his waiver. But
4  these generalized assertions do not overcome the preponderance of the evidence presented
5  by the Government. Defendants' rights were explained in simple terms with the aid of a
6  translator and a Serbo-Croatian form, and the video recording suggests Defendant understood
7  and knowingly waived his rights. Defendant never explains how the 16-hour delay somehow
8  rendered him incapable of a knowing and intelligent waiver or conversation.

9  To the extent Defendant suggests that the delay affected the voluntariness of his
10 actions, his argument also must fail. The test for voluntariness "is whether, considering the
11 totality of the circumstances, the government obtained the statement by physical or
12 psychological coercion or by improper inducement so that the suspect's will was overborne."
13 *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1987).

14 The Court can find no evidence that Defendant's will was overborne. The recordings
15 do not suggest that Defendant was tired, hungry, or otherwise prejudicially affected by the
16 16-hour delay. Moreover, the delay was reasonable. Several defendants were arrested on
17 the same day, and the Government's reasons for the simultaneous arrests – to avoid a risk of
18 flight and to ensure the safety of its agents – are not contradicted by any evidence presented
19 by Defendant. The Government flew three Serbo-Croatian translators to Phoenix for
20 assistance, but even with the aid of these translators all defendants could not be interviewed
21 immediately.

22 These facts, and the decision in *Gamez v. United States*, 301 F.3d 1138 (9th Cir.
23 2002), make clear that the delay was not unreasonable and cannot be presumed to have
24 rendered Defendant's statements involuntary. *Id.* at 1144-45 ("We conclude that Gamez's
25 statements to the FBI were voluntary. . . . Gamez's 31-hour detention was reasonable.
26 Gamez was advised by [the FBI agents] that he was being questioned for the murder of a
27 Border Patrol Officer. The interrogations were conducted in Spanish. Gamez was also read
28 his Miranda rights in Spanish prior to each interrogation. He indicated that he understood

1    his rights and signed a written waiver each time. . . . Gamez was never physically mistreated.

2    Nor was he psychologically coerced into making his statements.").

3        Defendant's reliance on *United States v. Garibay*, 143 F.3d 534 (9th Cir. 1998), is

4    misplaced.   The defendant in *Garibay* was read his *Miranda* rights and interrogated in

5    English despite the fact that his native language was Spanish and he had difficulty

6    understanding and speaking English.  Although Spanish-speaking agents were available at

7    the time of the defendant's arrest and interrogation, the interrogator did not enlist their help

8    in questioning the defendant.  *Id.* at 537.

9        Considering the totality of the circumstances, the Court concludes that Defendant's

10   interviews complied with Constitutional requirements.  His statements will not be suppressed

11   on the basis of *Miranda* violations or involuntariness.

12      **B.    Was Defendant's Initial Appearance Unreasonably Delayed?**

13       Defendant contends that his statements must be suppressed in light of the delay in

14   bringing him before a magistrate judge.  Dkt. #45 at 6-7.  In *Mallory v. United States*, 354

15   U.S. 449 (1957), the Supreme Court held that an incriminating statement must be suppressed

16   if the defendant made the statement during a period of detention that violated the prompt

17   presentment requirement of Rule 5(a) of the Federal Rules of Criminal Procedure.  *Id.* at 452-

18   55 (citing *McNabb v. United States*, 318 U.S. 332, 343-44 (1943)).[5]  The Government argues

19   that the *McNabb-Mallory* rule is no longer good law because it pre-dates the enactment of

20   18 U.S.C. § 3501(c).  Dkt. #46 at 5.  Defendant counters that a confession made outside of

21   § 3501(c)'s six-hour "safe harbor" is still subject to the *McNabb-Mallory* rule.  Dkt. #50.

22       "The degree to which the operation of the *McNabb-Mallory* rule has been curtailed

23   is unquestionably *not* clear from the plain language of [§ 3501(c)]." *United States v. Alvarez-*

24   *Sanchez*, 975 F.2d 1396, 1399 (9th Cir. 1992), *rev'd on other grounds*, 511 U.S. 350 (1994)

25

26

27       [5]  Rule 5(a) provides that a person arrested for a federal offense must be taken
28   "without unnecessary delay" before the nearest magistrate judge.  Fed. R. Crim. P.
     5(a)(1)(A).

1   (emphasis in original).[6]  The Ninth Circuit has not definitively resolved the issue.  *See id.* at

2   1404.  The Court need not wrestle with the question in this case, however, because neither

3   the *McNabb-Mallory* rule nor § 3501(c) compels suppression of Defendant's statements.  *See*

4   *United States v. Nguyen*, 313 F. Supp. 2d. 579, 592 (E.D. Va. 2004).

5        "Section 3501(c) creates a six-hour 'safe harbor' during which a confession will not

6   be excluded because of delay.  A court may exclude statements made outside the six-hour

7   safe harbor if the delay was unreasonable or public policy does not favor admission."

8   *Gamez*, 301 F.3d at 1143 (citations omitted); *see United States v. Van Poyck*, 77 F.3d 285,

9   288-89 (9th Cir. 1996) (discussing the "two ways to decide whether to admit . . . a non-'safe

10  harbor' statement").[7]

11       In this case, pursuant to the policy in this District, Defendant was brought before a

---

[6]Section 3501(c) provides, in its entirety:

> In any criminal prosecution by the United States or by the District of
> Columbia, a confession made or given by a person who is a defendant therein,
> while such person is under arrest or other detention in the custody of any
> law-enforcement officer or law-enforcement agency, shall not be inadmissible
> solely because of delay in bringing such person before a magistrate judge or
> other officer empowered to commit persons charged with offenses against the
> laws of the United States or the District of Columbia if such confession is
> found by the trial judge to have been made voluntarily and if the weight to be
> given the confession is left to the jury and if such confession was made or
> given by such person within six hours immediately following his arrest or
> other detention:   *Provided*, That the time limitation contained in this
> subsection shall not apply in any case in which the delay in bringing such
> person before such magistrate judge or other officer beyond such six-hour
> period is found by the trial judge to be reasonable considering the means of
> transportation and the distance to be traveled to the nearest available such
> magistrate judge or other officer.

18 U.S.C. § 3501(c) (emphasis in original).

[7]In *Dickerson v. United States*, 530 U.S. 428 (2000), the Supreme Court found
unconstitutional subsection (b) of § 3501, which was a congressional attempt to replace
*Miranda* with a generalized voluntariness test.  *See Guam v. Guerrero*, 290 F.3d 1210, 1220
(9th Cir. 2002).  Nothing in *Dickerson* challenges the validity of § 3501(c).

magistrate judge approximately 25 hours after his arrest.  This delay was not unreasonable.  *See Van Poyck*, 77 F.3d at 289 ("We . . . explicitly hold what has been implicitly understood all along:  An overnight or weekend delay in arraignment due to the unavailability of a magistrate does not by itself render the delay unreasonable under § 3501(c)."); *Gamez*, 301 F.3d at 1143 (holding that a 31-hour delay was reasonable where the defendant was detained at 7:30 a.m. and made his initial appearance before a magistrate judge at 2:00 p.m. the next day pursuant to the district's policy).[8]

The Court further concludes that public policy favors admission of Defendant's statements.  This is not a case where agents intentionally postponed Defendant's initial appearance so they could interview him before counsel was appointed.  Defendant made his initial appearance on the schedule established by district policy.  *See Van Poyck*, 77 F.3d at 290 ("This is not a case where the officers intentionally postponed arraignment so they could interrogate the defendant. . . .  Because the officers acted properly, no public policy would be advanced by excluding Van Poyck's statements."); *Gamez*, 301 F.3d at 1143.[9]

## C.    Failure to Notify Defendant of His Right to Contact His Embassy.

Defendant initially suggested that his statements must be suppressed because the Government did not contact the relevant embassy as required by the VCCR.  Dkt. #45 at 7.  After the Government noted that this argument was squarely rejected in *United States v. Lombera-Camorlinga*, 206 F.3d 882 (9th Cir. 2000), Defendant argued that the lack of embassy contact is one additional factor to be considered in evaluating the voluntariness of Defendant's statements.  Dkt. ##46, 50.  Thus, it appears that Defendant no longer contends that the lack of embassy contact itself requires suppression, a wise choice in light of current

---

[8]Although the explicit language of § 3501(c) concerns transportation delays, the Ninth Circuit has stated that "some delays that do not come within the safe harbor may be justified based on legitimate reasons other than difficulty in transportation[.]"  *Alvarez-Sanchez*, 975 F.2d at 1404 n.6.

[9]Defendant complains that the Government delayed his arrest and the unsealing of the indictment until two months after he was charged by the grand jury.  Dkt. #46 at 7.  But nothing in Rule 5(a), *McNabb-Mallory*, or § 3501(c) concerns delays between a defendant's indictment and his initial appearance.  *See Nguyen*, 313 F. Supp. 2d at 592.

Ninth Circuit law. *See Gamez*, 301 F.3d at 1143-44 ("[The VCCR] requires that foreign nationals be informed of their right to contact their consulate upon arrest. However, suppression of statements is not an appropriate remedy for violation of [the VCCR].") (citing *Lombera-Camorlinga*, 206 F.3d at 883-84).

The lack of embassy contact does not change the Court's conclusion that Defendant's statements were voluntary. Although embassy contact might have resulted in Defendant being advised of his right to remain silent and his right to counsel, Defendant was advised of these rights in his native language and knowingly chose to waive them. The failure to notify Defendant of his right to contact his embassy did not render his statements involuntary.

**IT IS ORDERED** that Defendant's Motion to Suppress Statements (Dkt. #45) is **denied**.

DATED this 30th day of November, 2006.


David G. Campbell
United States District Judge